Mr. Marshall, will you call the next case on the court's docket, please? Yes, sir. Your Honor, this case is the Docket 2-17-0643. John Kruschke, plaintiff's appellant. The Academy of Newsome, Department of Journalism, Incorporated. New Business, the Screen Act's property source, intended activity. Attorney-in-Law on behalf of Mr. Kruschke. Attorney-in-Law on behalf of Mr. Kruschke. Attorney-in-Law on behalf of Mr. Kruschke. Attorney-in-Law on behalf of Mr. Kruschke. Attorney-in-Law on behalf of Mr. Kruschke. Mr. Kirk, on behalf of the appellant, you may proceed. Thank you, Your Honor. Mr. Frosman. Good morning, Your Honors. Mr. Pace, the court. Mr. Kirk, here on behalf of the appellant and Mr. Kruschke. I would like the court to keep in mind that the contract mark of the property on which Mr. Kruschke was injured and it's that personal injury case that's the underlying case to all of this. Contract to market that property for sale is between the FLE Remax Property Source and I'm going to refer to it as Remax Property Source because we have Humple Realtors doing business as Remax and then we also have Mr. Humple individually in his deposition testimony, so that's why I make the distinction. Remax Property, the contract is between Remax Property Source and the owner of the property. There is no contract between the property owner and Mr. Newsome, who is a defendant but is not part of this appeal. Remax Property Source designated to Mr. Kenneth Newsome its responsibilities under that contract to market the property. So Mr. Newsome did not bring it in? He didn't bring this listing in, is what you're saying? Or somebody else brought it in and he was just the designated property broker? I believe Mr. Newsome brought it in. As far as the pleadings, the allegation and complaint is that Remax Property Source obtained the contract to market the property, the listing agreement, which is what I'm referring to as the marketing contract. And they have the sign in front of the building, but it has Mr. Newsome's name somewhere. Yes, correct. But as far as the contract to market it, that's strictly between Remax Property Source and the property owner. That would be the case in probably 99.9% of listing agreements, correct? Yes. And probably the vast majority of broker companies hire independent contractors. Yes. So theoretically, I mean, if your argument holds water, pretty much every independent contractor is an agent of a real estate company. Yes, Your Honor. Is that the law? What would be the purpose under the act of having these independent contract agreements, which in this case there was one, correct, that dealt with the issues of liability, at least between parties you're talking about? It characterizes itself as an independent contractor agreement. I don't believe that there are any terms in it that deal with liability. And the purpose, then, of the act of allowing for an independent contractor agreement as opposed to a straight employment agreement, which is Section 1520, I want to say is the one that or I beg your pardon, 1020, Section 1020, dealing with the ---- So what would be the purpose, again, of having that arrangement? Tax purposes. Tax purposes, having a W-2 employee as opposed to a 1099 employee. Expenses, you're saying ---- Picking up on his point, then, you could never have a truly independent contractor. The principal would always, under your argument, be responsible for the actions of the independent contractor because the third party is not going to know that, correct? If you concede that, that's part of your argument. The third party doesn't know what's going on between the two of them. So how could you ever, as the principal, limit your liability with an independent contractor under your argument? You can't. So automatically they're always responsible? Yes. That is the implication of the act. But is there a case law that says that? It would be a very easy case for us if the case law says that. It would indeed. And I suspect that's part of the reason that we are here today. No, there is no case law. This particular aspect of the application of the Licensing Act I don't think has ever been invoked. So we are in new territory for those implications. It does not, however, and this was a proper concern of the trial court. The trial court's concern was whether this defeats the provision for an independent contractor. The answer to that is no, it does not defeat it because you may be an independent contractor and an agent at the same time without defeating the independent contractor status. I like the way the lawyer case put it that I cited to in the briefs, and that is being an independent contractor, they put it the other way around. Being an independent contractor will not defeat a finding of agency if the independent contractor is also an agent. So there's the high... But you added something into the mix here. You'd have to concede the law is very clear. No vicarious liability exists for the actions of truly independent contractors, and we know that. So there would have to be something plus the mere fact that the person is an independent contractor because, again, and otherwise you want us to announce a rule that under these circumstances the principal is always liable for the licensee who works out of that office, right? Because under these circumstances, under the circumstances of the Act, those terms that are required by the Act do create an agency relationship. They do not defeat an independent contractor relationship. You may still have a 1099 relationship as far as tax purposes. You may not have, if there's any benefits to the independent contractor, that would be a purely contractual relationship. It would not be part of an employment relationship. The sponsoring broker, the real estate company, would not be beholden to take out workers' comp payments, unemployment benefit. None of that is changed. This Court would not be changing the status quo by recognizing that the Licensing Act, by its terms, does create an agency relationship. It adopts the common law in doing that. So what's our agency relationship in this case? In this particular case, the agency relationship, and to be more precise, and I'm sorry I did not find this terminology until I did my reply, the agency relationship, the first agency relationship is between the property owner and REMAX Property Source. The property owner hires REMAX Property Source to sell the property. REMAX Property Source designated Mr. Newsom to carry out the responsibilities of its contract. Mr. Newsom is the sub-agent to the appointing agent, REMAX Property Source, who is the agent to the principal, the property owner. In this sub-agency relationship, Mr. Newsom has two principals. The property owner is also his direct principal. Has the property owner been sued? No, it has not, because the Act, and this is where I see the sense of the public policy that is in the Act, Mr. Kresge, plaintiff, cannot sue the property owner because Article 15 of the Act, in particular Article 1560, breaks that common law liability between Mr. Newsom and the property owner. The property owner is defined as a consumer under the Act, a consumer of real estate services, and consumers of real estate services are not liable for the negligence of the licensees they're providing those services. Okay, so then why do we care about an agency relationship between the owner of the property and anybody else here? Well, because where I was going with that, and perhaps it was a misstep to start off with that, but where I was going with that is Remax Property Source is enjoying the benefits of its relationship with Mr. Newsom without entailing any of the risks. The only way that Remax Property Source makes money is out of the efforts, and this is by Mr. Humble's testimony, the only way that Remax Property Source makes any money is out of the efforts of these independent contractors. After Mr. Kresge, yes, after Mr. Kresge was injured, he decided to go ahead and buy the property. There was, and this is in the record at C-278, 279, Mr. Kresge did enter into an agreement to purchase, a written agreement to purchase the property from the property owner, and he wrote a check for $1,000 in earnest money. He wrote that check to Remax Property Source. Remax Property Source accepted that check. But how does that create liability? No, no, no, that does not create liability. That is part of the public policy picture. So is the public policy of the state going to be that realtors can enjoy the benefits of these relationships but be separated from the risks? If they are, in fact, legally separated from the risks. I see your point. I think you're saying in so many words the act, if we simply have an act that says you must address the independent contractor status and that's well and good, but you'd be exalting form over substance to the detriment of the public because they don't know what's going on. So we should look at something in addition to the independent contractor agreement. I see your point. But in this case, unless I missed something, Newsom has always worked as an independent contractor, never a W-2 employee. Tell me where I'm going wrong. Newsom was paid by commission only, was not on salary. The agency did not pay for any of his benefits and insurance. Newsom can terminate his relationship at any time. He was never directly controlled. So where do you also have the earmarks of an agency relationship aside from the agreement, which clearly says Newsom is totally independent contractor? Where do we attach our ruling on an agency relationship? Under the express authority that REMAX Property Source granted to Mr. Newsom to carry out its contract with the property owner. As an independent contractor. But that also makes him an agent, Your Honor. And again, there's no repugnancy between being an agent and being an independent contractor. To add something to the act, to add something to the act would be to say what this act means is you may be an independent contractor and you will never be an agent. That's adding something to the act. Okay, but an agent, you haven't used one of the two magic words yet. Are you saying this is an actual agency or an apparent agency? Actual agency. There are the earmarks, and it's all argued in the brief, there are earmarks for all. But to me, the most important one, certainly the strongest one, is the express actual agency, the express delegation between REMAX Property Source and Mr. Newsom. But if Mr. Newsom brings the property to REMAX Source, I can't remember the name, brings it to them and says this is my listing, and REMAX says okay, we'll take it, although it's signed under our name because that's our agreement, how is that creating an actual agency? Because it was never Mr. Newsom's listing, both by statute and by contract. The employment contract, in its general sense, between REMAX Property Source and Mr. Newsom, says that Mr. Newsom may only take these agreements on behalf of REMAX Property Source and in its name, and they are the property of REMAX Property Source. The licensing statute says that a broker, which is what Mr. Newsom is under the statute, REMAX Property Source sponsoring broker, that a broker may only act on behalf of and in the name of a sponsoring broker. A broker, an individual broker, may never operate on his own. If he or she is operating on their own, then that person is in violation of the licensing act. They may not provide real estate services. You're saying as a matter of law, even if Newsom, a person wanted to deal with REMAX Properties and they wanted to remain an independent contractor, everybody wanted them to be an independent contractor, you're saying they can't be under your interpretation. It doesn't matter what the party's intent. Correct. So he could never be an independent contractor. That's what the statute says. No, no. The statute does not say he can never be an independent contractor. Being an agent does not mean you are not an independent contractor. That's what the law says. Then why can't he be an independent contractor in this case? Because both the facts of this case, the individual facts, and that is where we started, and that was my concern at trial. That's still my primary concern now is attaching liability to REMAX Property Source and Respond Act Superior. The implication of our argument is that, yes, indeed, if you look at the statute, the statute automatically makes you an agent. It does not make you not an independent contractor. Do you have any legislative history you can point us to that indicates that was the intent of legislation that you're alluding to? The legislation is very old on this. I was not able to find any, but the plain language of the Act, which is where we start, speaks for itself. And does the party have the right to define the relationship? No, it does not, Your Honor. No, it does not. It says you sponsoring broker may either have an employee, a direct employee, or an independent contractor. But it does not say, and if you are an independent contractor under this statute, you are automatically not an agent. Well, nobody is saying that. We're looking at the Real Estate License Act that you're referring to. It says, the agreement shall address the independent contractor relationship terms, including without limitation supervision, duties, compensation. It says it's supposed to address that. What would be the point of addressing independent contractor relationship terms if, according to you, it's unnecessary and meaningless? You will always be considered an agency for private purposes. Why would they have that in there? It would be a nullity for them to do that, according to you. Your Honor, if you understand me to be saying it's unnecessary and meaningless, then I have not expressed myself clearly. It is meaningful. It does, for my purposes, for my client, for any public policy on this interpretation of the statute, being an agent does not defeat being an independent contractor. The purpose of that, then, is to justify to the IRS when they do an audit that this person is, in fact, an independent contractor. It's for tax purposes, you're saying, not for liability purposes? For tax purposes, you're strictly an independent contractor. For liability purposes, depending on the facts, you may also be an agent in both the individual facts of our case and the terms that are required by the statute. But the facts of this case, the only thing that I've heard you point to is that REMAX gets this listing and then they send, they give it to Newsom to carry it out. That's it, right? That's it. That is the grant of express authority that creates an actual express agency. Yes, Your Honor. And I'm just trying to think of the floodgates that will open by saying that simply by giving an independent contractor a job, you have then created an agency relationship without even considering the first and foremost factor distinguishing an agent from an independent contractor, and that is the right to control the manner in which the work is performed. Simply by me, REMAX saying, hey, go try to sell this house for me, how am I in any way, shape, or form telling you how the manner in which you're supposed to do that? Because under an express grant of authority, an analysis for factors such as that is not appropriate. And I beg your pardon, I could look it up quickly. I did cite the case law for that proposition in my brief. But when you have an express grant of authority, there is no need for that. It is the express grant to do this thing for me that creates the agency relationship, and then you no longer need to. Irrespective of the right to control, you're saying? Yes. And you have a case law that says that? Yes, Your Honor. If you would like me to, I can look it up quickly. Go ahead. There is also, as I look for this, the restatement of agency, section 3.15, I believe it is, that stands for that proposition as well. Are you talking about Bruncheon v. Bethalto Pizza? That's the... The Zanini B. Reliance Insurance Company, 147 O. 2nd, 437. And it stands for what proposition? That it is, and I paraphrased in my brief, but this is what I have. It is improper to apply a four-part agency test to determine agency when the principal has expressly given you the authority to act on its behalf. And what was the authority in that case? The authority in this case was the authority to carry out the marketing contract. Who paid for it? I beg your pardon. The authority in that case was to offer insurance policies and specifically to bind coverage for the defendant insurance company. That agreement provided that the individual agent had the authority to bind coverage and execute contracts in accordance with the guidelines furnished from time to time by the company, as authorized by the company. Now, we have that same situation here. The contract between Mr. Newsom and Remax Property Source authorizes him to go out, engage in these contracts on its behalf, in its name, to market the property that Remax Property Source assigns it to, designates, appoints, whichever word you wish to use. We have the facts parallel each other. All right. Mr. Kruger, we're about way past the time. Shall I go further? Yeah. You'll be able to address the court again when you're done. Very good. Thank you very much. Mr. Carlson, you may proceed. I am curious, however, as to where your sport jacket or suit jacket is. I will be happy to address it. That's hanging right next to where I grabbed my keys this morning. I apologize. That was not meant to be any disrespect. We don't often see this, so I am a little curious. Yes, I came here about 45 minutes before I was supposed to argue, and I'm about 45 minutes away, and that's when I realized that it was not hanging up in the car next to me. You may proceed. Your Honors, Eric Carlson here for Home Home Realtors. First thing I'd like to address is this distinction between an agent and an independent contractor because they're not opposites. With an independent contractor or, I'm sorry, when you're not dealing with an independent contractor, when you're dealing with a regular employer-employee relationship, vicarious liability attaches to anything that happens within the scope of the employment. That's because the express grant of authority that the employer gives to his employee is extremely broad. They're saying, hey, I'm controlling all of your work. You're authorized to work for me. And so anything that happens within the employment relationship can then lead to vicarious liability. When you're dealing with an independent contractor, you don't have that express broad grant of authority. You are dealing with something that is much, much more defined, and that's what we have here. So I think the first step is to get past whether or not this is an employer-employee relationship or an independent contractor relationship. And I believe that all the factors that look into that, how they're paid, the right to control the method and manner of the work, the type of work that it is, all of those factors, I believe, show that this is an independent contractor relationship in addition to the fact that that is what the parties clearly intended by the contract. And that's what I was asking him, to which he says, but, aha, the statute was intended to change all of that. His answer is that somehow the statute trumps those factors. And I think that that reading of the statute would require you to read the statute to say the opposite of what it actually says. The statute says that you can have an independent contractor relationship. I don't know that it makes any sense to interpret that as meaning that the independent contractor relationship can never exist. He's saying it's a matter of public policy, and I don't have any legislative history that's been called to our attention here that tells us when one or the other. But that seems to be his position. And if I may, Your Honor, I think public policy would actually go very far against this. And this is a situation where if automatically every independent contractor was considered an employee and there was vicarious liability, the burden to anybody having any work done in any situation would be astronomical. Anybody could be sued any time they hired an independent contractor. Any individual could in this State. We use independent contractors. Well, he may be referring to real estate. He's not saying in every one, but he seems to be saying this particular statute has a different purpose. Your Honor, I don't see that that actually exists. But to get down to what the actual express authorities in the SISC said, there are situations where even though it is an independent contractor relationship and there is no control over the means and methods of the work, there still can be a principal and agent relationship. I can hire somebody to maybe build a chair for me. I'm not going to control how they do it. I don't know how a chair gets built. I'm hiring as an independent contractor, but if for some reason on his way out the door I say, you know what, I'm really hungry. Here's $10. Will you drive over and buy me a hamburger? And he says, sure, I'm going to do that. He's my agent for the purposes of that drive over to get the hamburger back. If he gets into a car accident on the way, our relationship as me hiring him to build a chair for me, that's, you know, completely separate. He may have a point under the law that I suppose you can't necessarily limit your liability to third parties by a piece of paper where in essence or in fact you're acting as, you know, somebody's agent and you're really not. So let's take it that way. Sure. But aren't there other factors in here that would tend to establish there was an independent contractor relationship aside from the document itself? So can you address those things that would weigh one way or the other on the issue? Yeah, and the most important one of those factors has to do with the means and methods of the work, if there's any control over the means and methods of the work. Of course, they're already here. Absolutely not. And in fact, the testimony is undisputed in that fact. Mr. Newsome, to his credit, he certainly could have wanted to try and have there be an agency relationship here and he could have said something differently. But he testified the exact same as Mr. Humpel, which is that there was no control over how he did any of his work. There were no mandatory office hours. There's actually a longer list of items that come up in the contract that clarify and express the complete lack of control over the work. The next element has to do with how he was paid, and he was always paid as an independent contractor. That's not disputed. The third element has to do with what level of skill is required here. In this case, a higher level of skill, which you need to be a real estate agent, that tends towards finding an independent contractor relationship. Do you have to be a broker or today are all real estate salespersons brokers? No. There has to be a broker involved in order to sell the property. You have to go through a broker, but what ends up happening is there's brokerages that have several independent contractor realtors working for them. Okay. So it always has to go through a broker. That's what the actual act sets up. So there is some level of control here. Now, in this case, there is actual express authority for Mr. Newsome to negotiate a real estate contract. So if this had been a contract action where he had made some promises or something of that nature, he would be an agent? Yes. Under the express authority? Exactly. Not because of any employee-employer relationship or independent contractor, but because of the express authority. If this was about negotiating a contract, in that situation, he'd be unhooked. If he would have put something in during the negotiation that said the buyer is going to be responsible for the inspection instead of the seller, or vice versa, that he would be unhooked for something like that and messing up part of the negotiation that nobody intended. That I fully understand and agree with. It's the point of taking all of his actions, including the ladder, including adjusting the ladder to go far beyond negotiating the contract and trying to find vicarious liability for that. That's where I believe the law of agency is quite clear that there's nothing here. In fact, I set it to an actual example that I think is spot on from the restatement of agency, talking about how, you know, if you hire someone to negotiate a real estate contract for you and while they're in the office getting the paperwork signed, they trip and knock ink over on the buyer, you're not liable for them for whatever damages are caused by having the ink knocked on them. Because you had hired that real estate broker specifically for the purpose of negotiating the contract, not for doing whatever other acts they might have been doing within the scope of their employment. And that really is, I think, an important distinction. You have to look that comes up when you're dealing with independent contractors versus an actual express agent for a particular situation. So Newsom had, according to the agreement, the right to market? I'd like to point out that that right to market, first of all, here refers to that as Newsom then being a sub-agent of REMAX. The right to market comes up with that listing agreement specifically with the owner. Now, the Act makes it very clear that there is no liability on the owner's part. So if there is no liability to the owner, who's the actual principal, that would work all the way down the chain. I mean, if the principal is not liable for the acts of the agent, then likewise the agent would not be liable for the acts of the sub-agent. Furthermore, the general right to market, I don't think, has anything to do with exercising any control over how he shows the property, how he extends a ladder, how he sends somebody up on the roof and adjusts the ladder. I think that's very different. I think the right to market, although that might create some agency with the owner, I don't think that's going to create any agency for this particular situation that's going to extend between the broker and the real estate, the realtor. Does Mr. Newsom pay for the actual publication? Doesn't he cover all of his own expenses or is that covered by HUMBL? There are certain expenses that are covered by HUMBL. I think they pay for the phones and for certain forms. And an office. There's an office. But if he wanted to list this in a paper, he would have to go to his owner and say, here's the money to put this in this weekly listing. Absolutely. In fact, he can lose money on any given sale. If he wants to invite over a whole bunch of potential buyers and have a whole spread of food out there like they do for some residential real estate properties, he could do that and he could end up not selling the property. He could put out a lot of his own money advertising this, putting forward other things to try and get the sale going, and he has the opportunity to make money or lose money. That doesn't ever come back to REMAX. And that is, once again, one of the things that weighs heavily in favor of finding him an independent contractor in this situation. Are there any other questions you have for me? I don't see that there are. I do have one question. There's an issue about how this case should be considered, either as a motion to reconsider or a motion under 213.01. What's your position on that? I believe it is a motion to reconsider is how it was actually brought before this court. Section 1301, if you look at the actual language of the statute, that does apply specifically to default judgments. So I don't see that that applies to this situation at all. And regardless, I don't believe that that would in any way affect the standard of review that you guys are looking at. To try and argue that summary judgment is decided on something other than a substantial justice standard and that there is somehow a lower standard that can be applied in reconsidering this, a summary judgment motion, just doesn't make a whole lot of sense to me. If the summary judgment motion can be granted in the first spot, how would you have a different standard than reassessing it? All right. Thank you, Mr. Coughlin. Thank you. All right, Mr. Kirk, you may address the court on your button. Thank you. And I know you want to raise some points, but I want to get this off the plate. How can this be a 1301 motion? Because it was a final judgment to a party in this lawsuit. It wasn't declared such until later, however. You had a motion pending for a 304A, correct? That wasn't decided until later? No, actually, it was Remax Property Source that had the 304A finding. But it wasn't decided that it wasn't granted until afterwards, was it? It was not a final judgment for purposes of appeal, but it was a final judgment regarding this party. 2-1301 applies to not only default judgments, if you like the plain language, any final judgment. And although this judgment was not final at that point for purposes of appeal, it was final for purposes of 2-1301. And the Washington Mutual case gives all the reasoning behind that, that what 2-1301 does is codify the court's inherent authority to review any orders within its term. Was Washington Mutual a default judgment case? No, sir, it was not. It was an arbitration action in which the appellants personally did not appear at the arbitration hearing, but their attorneys had. And so that court analyzed. And then after the appellants did not like the arbitration decision, apparently they moved for reconsideration and they moved, they invoked Section 2-1301. The appellate court took a look at it under the rules on arbitration, which provide that the co-civil procedure applies except as limited by these rules on arbitration. It was either Rule 90 or 91 that that court looked at, which provides that if a party fails to appear, either personally or through their counsel, then they may direct motions towards the arbitration decision, either under 2-1301 or 2-1401, as appropriate. In that particular case, the party's attorneys, the appellant's attorneys, had been at the arbitration hearing. And so what that court ruled, what the Washington Mutual court, or the, I'm sorry, not Washington Mutual, it's the court that our trial court relied on and that the REMAX property source relied on in response. The name escapes me. But what that court ruled was that, I think I'm mixing up the two cases. You did ask about Washington Mutual. I beg your pardon. Washington Mutual was a default judgment case, was it not? I mean, it just sets forth the basic premise of 1301. You know, I beg your pardon, Your Honor. I don't remember. Are you thinking of Draper and Crane? No, no, no. I'm thinking of, it's the case that our trial judge relied on and has written in order and memorandum. And I believe the REMAX property source cited it, too, as well, in their response. And I just confused the two cases. I don't remember. It does not, it doesn't sound wrong that Washington Mutual may have been a case concerning default judgment. Are you thinking of Williams v. Dorsey? Yes, Your Honor. Thank you. And that was the case that, in discussing 2 F's 1301, where the trial court discussed 1301. That particular case actually was addressing Rule 90. I apologize for confusing the two cases. Washington Mutual, I do not remember the details right now. I have no memory to contradict the court that that was a case of default judgment. In any event, it still stands for the proposition that when you are under, when your stance is under Rule 304A, and the trial court has not yet certified a merit for appeal under Rule 304A, then 2-1301E must be available. Now, all I did in the trial court was invoke the standard of 2-1301E for the motion for reconsideration, which is substantial justice. I've just never seen that applied to a case where summary judgment is fully briefed on the merits, and then you lose when you file a motion to reconsider, and instead of saying, well, the trial court went wrong in its decision, invoke this substantial justice. I've just never seen that invoked in that situation before. In the cases that you cited where it wasn't simply default have to do with attorneys' neglect, no notice to parties, things of that gross disparity in bargaining positions, things of that nature that don't necessarily go just strictly to the merits. Correct, Your Honor. But I did not ask the trial court. I think the trial court mistook my intent and mistook any argument that I had with it. I did not ask the trial court to take a look at the summary judgment under any kind of lower bar, lesser standard, broader standard, anything else. What I asked it to do was take a look at our motion for reconsideration, and the mere fact that we asked the trial court to review its own order with an open mind, we are asking we address our motions to the court, but they're decided by human beings. And I was asking a human being in a very powerful, very responsible position to say you've made a mistake, and that's why 2-1301 must be there and that standard for motions for reconsideration. Take a look at this with an open mind. Achieve substantial justice between these parties. If I was wrong, if any movement is wrong under 2-1301E on the substance of the underlying question, substantial justice will be to affirm that underlying decision. But if the movement is correct, substantial justice is for the judge who is presiding on that matter to take a look at the case as if he's never seen it before, take a look and see if we do have the right decision there. And I'm confident in our case we had an incorrect decision there, and if the trial court had agreed with us, I wouldn't be here today. My colleague across the bar would not be here today. You'd be hearing another case. Thank you, Mr. Kirk. Thank you. Thank you very much. All right, I'd like to thank both counsel for the quality of their arguments here this morning. The matter will, of course, be taken under advisement in a written decisional issue in due course. We will stand at brief recess to prepare for our last case of the morning. Thank you.